UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Magistrates Cases No. 00- 4001 & 4002-SNOW

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| DONALD T. ROBERSON, | ) |
| FRANTZ LAVACHE | ) |
| and | ) |
| JOSEPH SAMUELS, | ) |
| | ) |
|      Defendants. | ) |
| | / |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

THIS CAUSE having come before this Court on the Government's Motion for Pre-trial Detention of the above reference defendants, the United States of America hereby files its Memorandum in Support of an Order denying the defendants bond and detaining the defendants pending trial for the reasons set forth below.

### FACTS

On October 29, 1998, a Confidential Source (hereafter referred to as "CS") agreed to participate in a controlled purchase. The purchase was monitored and recorded by law enforcement officers, using a body transmitter affixed to the CS. The CS was supplied documented United States Currency, searched and found to be free of contraband, and was instructed to proceed to a residence located at 1721 NW 6th Ave., Fort Lauderdale, FL. Once inside the residence, the CS met with an unidentified black male who the CS described as approximately 30 years old, 5'6", 200 lbs. with a

muscular build.  The CS requested an "eight-ball".  The unknown black male reached on top of the refrigerator and pulled down a plate that had approximately 15 baggies of powder cocaine on it.  The CS and unknown black male exchanged the cocaine for currency.  The CS left the residence and supplied the cocaine to a police officer.  The purchased cocaine had a field weight of 5 grams and field tested positive for the presence of cocaine.  The seller of the cocaine has not yet been identified by law enforcement officers.

On November 11, 1998, a cooperating source agreed to participate in controlled purchase of cocaine.  The purchase was monitored and recorded by law enforcement officers, using a body transmitter affixed to the CS.  CS was supplied by law enforcement officers with $700.00 of documented United States Currency.   The cooperating  source was searched and found to be free of contraband.  The CS proceeded to 1604 NW 11th Ct. Ft. Lauderdale.  (DONALD ROBERSON'S residence).  Inside the residence, the CS handed ROBERSON the aforementioned United States Currency in exchange for ounce and an additional 1/8 of an ounce of powder cocaine.  The substance was turned over to law enforcement officers, who field tested the substance, and found it to be positive for cocaine.  The substance was weighed by the officers, for a weight of 32.5 grams.

On November 11, 1998, the same CS participated in a controlled purchase of cocaine at 1721 NW 6th Ave. Ft. Lauderdale, FL.  The purchase was monitored and recorded by law enforcement officers, using a body transmitter affixed to the CS.  The CS was supplied with $50.00 by law enforcement officers, who also searched the CS and found him to be free of contraband.  The CS proceeded to 1721 NW 6th Ave., where the CS purchased approximately 1 gram of a powdered substance, believed to be cocaine, from a person CS identified as "Joe," and was later photo identified as JOSEPH SAMUELS. Total weight with packaging equals 1 gram.  A field test proved positive

for the presence of cocaine.

A search warrant was executed at 1721 NW 6th Avenue on November 18, 1998, yielding 16 bags of powder cocaine, 5 bags of marijuana, a stolen 38 cal. pistol, and various documents linking ROBERSON and SAMUELS to the residence. All narcotics were in plain view on livingroom table. At the time of the execution of the search warrant, JOSEPH SAMUELS was observed conducting a transaction with unknown occupants of a Red Ford Probe that fled the area. SAMUELS was detained in the driveway (carport) at the residence. SAMUELS was charged with possession of cocaine/marijuana with intend to distribute, possession of a loaded stolen firearm and possession of a firearm by a convicted felon. According to JOSEPH SAMUELS, when he was arrested federally, SAMUELS is presently on probation for this arrest.

On March 5, 1999, FBI Special Agent Greg Mcdermott, Ft. Lauderdale Detective Clay Barrett, and DEA Task Force Agent Eugene Lewis sent an confidential source to 1604 N.W. 11th Court, Ft. Lauderdale, FL. The purchase was monitored and recorded by law enforcement officers, using a body transmitter affixed to the CS. he CS was provided with $700 of FBI investigative funds, and was searched and found to be free of contraband. The CS arrived at the location and was greeted by Donald ROBERSON and allowed inside the residence. ROBERSON asked what was needed, and the CS responded, "an ounce." ROBERSON told the CS that an ounce would cost $750. The CS said he only had $700. ROBERSON said he would remove a little from the ounce. According to the CS, ROBERSON then went to a bedroom and returned with a bag that contained approximately ½ kilogram of cocaine. He removed a portion from the bag and placed it on a scale. ROBERSON then put this portion in a smaller bag, and handed it to the CS and took the $700 from the CS. As the CS departed ROBERSON told CS that he had installed a new fence at 1721 NW 6th Avenue. The CS

3

returned to the presence of the law enforcement officers, and turned over the small bag. The substance in the bag was field tested and found to be 27.5 grams of cocaine powder.

On August 17, 1999, a confidential source participated in a controlled purchase of crack cocaine at 1604 Northwest 11th Court, Fort Lauderdale, Florida. The purchase was monitored and recorded by law enforcement officers, using a body transmitter affixed to the CS. When the confidential source arrived at the above address, CS was greeted by Joseph SAMUELS. SAMUELS advised the confidential source that ROBERSON did not leave the cocaine requested by the confidential source. SAMUELS instructed the confidential source to return at a later time that day. The confidential source departed the address and met with investigators. At approximately 6:00 p.m., the confidential source was once again instructed to return to the above residence where the confidential source was greeted by SAMUELS, ROBERSON and an unknown black male identified as ROBERSON's cousin. ROBERSON explained to the confidential source that he did not have the requested cocaine processed into hard form (crack). ROBERSON told the confidential source that he would have his cousin process the powdered cocaine into a crack form. While in the presence of the confidential source, ROBERSON asked the unknown black male to process the cocaine into to crack. The confidential source was then told it would take about half an hour to cook the crack. The confidential source paid ROBERSON $300.00 for the "crack." Donald ROBERSON advised the confidential source that he expected $600.00 in return from sale of the "crack" cocaine.

While inside the residence August 17, 1999, the confidential source witnessed SAMUELS conduct approximately four (4) narcotics transactions. The confidential source stated that SAMUELS kept the narcotics he used to sell to individuals in a large plastic bag which he had in his front pants pocket. When it was time for the crack to be packaged, SAMUELS handed the

4

unidentified black male a plastic bag. The unidentified black male then put the crack cocaine into the

plastic bag and placed it on a counter for the confidential source. The crack cocaine later lab tested

positive for cocaine weighing approximately 10 grams.

On August 25, 1999, a confidential source was provided with $600.00 of U.S. currency, and

agreed to meet with Donald ROBERSON at 1604 Northwest 11th Court, Fort Lauderdale, Florida.

The encounter was monitored and recorded by law enforcement officers, using a body transmitter

affixed to the CS. When the confidential source arrived at 1604 Northwest 11th Court, CS met with

Donald ROBERSON, an unknown black male, a black male known only as ROBERSON's cousin,

and Derrick, last name unknown (LNU), also known as "Notin Nice." The confidential source gave

ROBERSON $600.00 . ROBERSON asked the confidential source if CS wanted a half ounce of

crack cocaine. The confidential source reported that CS wanted a whole ounce of crack cocaine.

The confidential source then asked ROBERSON if it would be possible to get 5 ounces in the future

for a truck driver friend. ROBERSON advised the confidential source that he had plenty of cocaine

and 5 ounces would be no problem in the future. ROBERSON further advised the confidential

source that an ounce of crack cocaine was going for $600.00 at the time, but the following month

the price would be going up. ROBERSON then asked Derrick LNU to cook up an ounce of crack

cocaine for the confidential source. Derrick LNU asked the confidential source if CS wanted the

crack cocaine cooked "Gucci." The confidential source did not understand the meaning of the term

"Gucci" so Derrick explained that Gucci required cooking cocaine twice so it was harder and easer

to shave off a piece of crack cocaine for distribution. Then the confidential source advised Derrick

to only cook the cocaine once. While in front of the confidential source, Derrick cooked the cocaine

into crack in a micro wave oven. The confidential source handed ROBERSON a small plastic bag.

5

ROBERSON handed the plastic bag to Derrick who then put the crack cocaine into the bag.

ROBERSON told the confidential source that the crack should sell for $1,200 and that since he was

fronting the crack to the CS, the CS owed him $600.00.

On November 18, 1999, a search warrant was executed at 1721 NW 6th Ave., Fort

Lauderdale, FL by members of the Fort Lauderdale Police Department.   When the officers

approached the residence, Joseph SAMUELS was observed conducting a transaction with unknown

occupants of a red ford Probe.  On the officers approach the red Probe fled the area and Samuel was

detained in the drive way.  The following items were seized from the residence:

> -5 bags of marijuana- field weight 8 grams with packaging
> -16 bags of cocaine- field weight 19 grams with packaging
> -1-S&W 38 caliber revolver stolen- Daytona Beach Shores Police
> -2 additional bags of cocaine - 2 grams field weight
> -$187.00 United States currency
> -mail & documents with DONALD ROBERSON'S name on it.
> -1 F.P.L. bill with Joseph SAMUELS name on it, addressed to 1721 NW 6[TH] Ave.
> Fort   Lauderdale, FL
> -Numerous empty ziplock bags used for drug packaging

SAMUELS was arrested and charged with various drug and weapons offenses at the scene,

including possession of a firearm by a convicted felon.

On December 28, 1999, a confidential source was provided with $1,800 of U.S. currency and

instructed to meet Donald ROBERSON at a residence located at 1604 Northwest 11th Court, Fort

Lauderdale, Florida as prearranged recorded meeting.  The purchase was monitored and recorded

by law enforcement officers, using a body transmitter affixed to the CS. The confidential source was

met at 1604 Northwest 11th Court by ROBERSON and an unidentified individual known only as

"John John."  When ROBERSON saw the confidential source he said "damn, I'll be right back."

ROBERSON departed 1604 Northwest 11th Court in his truck, a gold 1998 Ford F-150, and

proceeded to 5802 Northwest, 12 Street, Apartment F, Sunrise, Florida, followed by law enforcement surveillance.  After ROBERSON departed 1604 Northwest 11th Court, FRANTZ LAVACHE, known by the confidential source as "Cross Eye" entered the residence.  ROBERSON was inside Apartment F for approximately 4 minutes when he exited carrying a black jacket.  ROBERSON returned to 1604 Northwest 11 Court without making any stops.  When ROBERSON entered 1604 Northwest 11th Court, he was in possession of the crack cocaine he later sells to the confidential source.  The cocaine was already in crack form but was all broken up so it had to be re-cooked. ROBERSON handed the crack to the individual calling himself John John for re-cooking.    The confidential source then handed ROBERSON the $1,800.00.  Once the crack cooled down after cooking, John John weighed it on a digital scale  John John then handed approximately 56.5 grams of crack cocaine to the confidential source who then left the residence and delivered the substance to law enforcement.  Detective Barrett then field tested the crack which tested positive for the presence of cocaine.

On January 3, 2000, at approximately 12:00 p.m., a police surveillance was conducted at 1604 Northwest 11 Court, Fort Lauderdale, Florida, and 5802 Northwest 12 Street, Sunrise, Florida.  At approximately 12:03 p.m., a black male, later identified as Donald ROBERSON was observed leaving 1604 Northwest 11 Court, Fort Lauderdale, Florida, in a white 2 door Oldsmobile Cutlass.  It was apparent to your affiant that Donald ROBERSON was surveillance conscience and attempted to make several evasive turns in an attempt to elude the possibility of being followed.

At approximately 12:19 p.m., Donald ROBERSON arrived at 5802 Northwest 12 Street, Apartment F, Sunrise, Florida.  ROBERSON was observed exiting the white Cutlass and seen approaching the front door of this location.  A short time later, a black male, later identified as

FRANTZ LAVACHE, was also observed arriving at this location driving a gold 1998 Ford F-150 that is registered to Donald ROBERSON. LAVACHE was seen exiting the pickup truck and approaching the front door of this location. A black male, later identified as Donald ROBERSON, was then seen exiting the location and departing the area into the gold 1998 Ford F-150 pickup, carrying nothing. A lawful traffic stop was executed by a Sunrise marked police vehicle in the vicinity of 5600 block of Northwest 15 Street in Sunrise, Florida. During the traffic stop ROBERSON gave verbal consent to search the pick up truck. An open air search was conducted utilizing a narcotics K-9 dog. The search resulted in the discovery of approximately 10 brick shaped packages found in the rear passenger compartment in a cardboard box. Further investigation revealed that the packages contained a white powdery substance, which field tested positive for the presence of cocaine.

At approximately 12:42 p.m., a Red in color Chevrolet Corsica arrive at 5802 Northwest 12 Street, Apartment F, Sunrise, Florida. A black male, later identified as Joseph SAMUELS, was seen exiting the vehicle and approaching the front door of the location. At approximately 2:25 p.m., two black males identified as SAMUELS and LAVACHE, were seen walking away from apartment "F", and entering the Red Chevrolet Corsica. SAMUELS and LAVACHE drive away from the location. At approximately 2:30 p.m., a traffic stop was conducted on the Corsica by marked Sunrise Police vehicles. Further investigation revealed that the vehicle and its occupants were free of any narcotics and/or contraband, but were detained pending the outcome of this investigation.

At approximately 3:15 p.m., a State of Florida issued search warrant was executed at 5802 Northwest 12 Street, Apartment F, Sunrise, Florida 33313. A search of the residence revealed a plastic bag in plain view on the living room table, . In the plastic bag was a package with white

8

powdery substance similar to what was found in Donald ROBERSON's vehicle, along with an additional clear plastic bag of a white powdery substance. The weight of the white substance was approximately 1.5 kilograms, it field tested positive for cocaine. In the kitchen ceiling panels two shoe boxes were found. One box contained clear plastic bags of a white powdery substance which field tested positive for cocaine. The second shoe box contained clear bags of a white powdery substance which also field tested positive for cocaine as well as a clear bag containing individual packaged green leafy substances which field tested positive for marijuana. Ten thousands dollars of U.S. currency ($10,000.00) was found in the south bedroom in the top drawer of night stand. In the northern most bedroom a plastic shopping bag was recovered that contained a large quantity of small empty plastic zip lock bags commonly used to distribute illegal narcotics. Additionally digital scales were also recovered inside the location.

ARGUMENT

The Government's proffer to this Court establishes by a preponderance of the evidence that defendants Donald Roberson, Frantz Lavache and Joseph SAMUELS possess a risk of flight if released on bond pending trial. In addition, there is clear and convincing evidence that the defendants also possess a danger to this community.

Because the defendants have been charged with violating a statute contained in the Controlled Substances Act (21 U.S.C. § 801 et seq.), for which a minimum term of imprisonment of ten (10) years is prescribed, there is a rebuttable presumption of risk of flight and danger to the community [18 U.S.C. § 3142(e)]. As such, the defendants have the burden to produce evidence demonstrating that they are not a flight risk or a danger to the community. United States v. Quartermaine, 913 F.2d 910 (11th Cir. 1990).

The Government's proffer, in accordance with the factors to be considered in 18 U.S.C. § 3142(g), suggest substantial evidence of the defendants' risk of flight and danger to the community, namely:

1. Crack cocaine, a Schedule II narcotic controlled substance, is involved in the offenses against the defendants;

2. The evidence which includes tape recorded purchases of controlled substances against the defendants, as indicated in the above facts, is strong.

3. The defendants face up to life imprisonment under the statute and over 10 years under the Sentencing Guidelines just on the facts set out above not including their various prior convictions;

4. The defendants are now aware of the Government's case against them, having heard the Government's proffer;

5. The Government's confidential informant has agreed to testify should this case proceed to trial and will introduce all of the undercover taped conversations between himself and the defendants that were made during the various drug purchases listed above;

6. The Government's seizure of 12 kilograms of cocaine in this case recovered in the truck and residence of Defendant Roberson can be considered persuasive evidence of conspirators intent to participate in future narcotics transaction.

7. The scales, firearms and large amounts of cash show that this a continuing enterprise which would severely impact on the community.

Clearly the Government's factual recitation established by a preponderance of the evidence that the defendant is a risk of flight. United States v. King, 849 F.2d 485 (11th Cir. 1988). In

10

addition to providing sufficient evidence of the defendant's risk of flight, the Government's proffer also established that the defendants are a danger to this community if given a bond prior to trial.

## CONCLUSION

The facts presented to this Court support a finding that defendants Donald Roberson, Frantz Lavache and Joseph SAMUELS Christopher are a flight risk and a danger to the community. For the reasons stated above, the United States requests that this Court enter an Order granting the Government's motion for pretrial detention of all the defendants.

Respectfully submitted,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

By

DAVID CORA
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.: 471623
Telephone No.:  (305) 356-7255
500 E. Broward Blvd., Suite 700
Fort Lauderdale, Florida 33394

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Memorandum of Law was hand delivered on the ___7___ January, 2000, all the attorneys assigned by the Court to represent the defendants at bond hearing.

DAVID CORA
ASSISTANT UNITED STATES ATTORNEY

12